# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____
                                    )
**Alfa International Seafood, et al.,** )
                                    )
    **Plaintiffs,**           )
                                    )
    v.                        )    Case No. 17-cv-00031 (APM)
                                    )
**Wilbur L. Ross, Jr., et al.,**     )
                                    )
    **Defendants.**            )
_____ )

## MEMORANDUM OPINION AND ORDER

Before the court is Defendant-Intervenor-Applicants' ("Applicants") Motion to Intervene. *See* Mot. to Intervene, ECF No. 24 [hereinafter Mot. to Intervene]. The Applicants are three environmental groups—Oceana, Inc., the Natural Resources Defense Council, Inc., and the Center for Biological Diversity—who seek to enter this case to defend against Plaintiffs' challenge to the Seafood Import Monitoring Program, 81 Fed. Reg. 88,975 (Dec. 9, 2016), otherwise known as the "Seafood Traceability Rule."

During the telephone conference held on March 8, 2017, the court committed to ruling on the Motion before the start of summary judgment briefing. The Motion to Intervene became ripe on March 29, 2017, and Plaintiffs' Motion for Summary Judgment is due on April 25, 2017. Because of the time limitations inherent in the current expedited briefing schedule, this written decision is not as fulsome as it otherwise might be. This Memorandum Opinion and Order nevertheless explains, in abridged form, why the court denies the Motion to Intervene.

## I. STANDING

First, the court finds that the Applicants lack standing. In this Circuit, those whose seek to intervene as a matter of right under Rule 24(a) of the Federal Rules of Civil Procedure must

establish Article III standing. *See In re Endangered Species Act Section 4 Deadline*, 704 F.3d 972, 976 (D.C. Cir. 2013). As a general matter, a prospective intervenor has standing when it has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. ___, ___, 136 S. Ct. 1540, 1547 (2016) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). An injury in fact is "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (footnote, citations, and internal quotation marks omitted).

The Applicants' claimed injuries do not qualify as "concrete" within the meaning of *Lujan*. Each of their proposed injuries rests on the same premise: Invalidating the Seafood Traceability Rule (the "Rule") against Illegal, Unregulated, and Unreported ("IUU") fishing will result in the loss of protections afforded by the Rule and therefore reduce the likelihood that Applicants' members will be able to avoid the various harms that the Rule seeks to protect against, such as uninformed consumer choices, reductions in at-risk fish populations, and degradation of marine ecosystems. Mot. to Intervene at 11–14. An uncertain lessening of risk to the ills of IUU fishing— which is already illegal—is simply too abstract to satisfy the "concrete" injury requirement. *Spokeo*, 136 S. Ct. at 1548 ("A 'concrete' injury must be . . . 'real,' and not 'abstract.'"). Admittedly, actually buying illegally purchased or mislabeled at-risk fish against one's desires, *see* Mot. to Intervene, Ex. 3, ECF No. 24-3 [hereinafter Kroner Decl.], ¶ 19, or the substantial likelihood of a reduced opportunity to view and study at-risk fish species, *see* Mot. to Intervene, Ex. 6, ECF No. 24-6 [hereinafter Steiner Decl.], ¶ 16, might qualify as a concrete injury. However, the injuries claimed here are one step removed from such injuries. The inexact prospect of

reducing exposure to the actual harm Applicants' declarants wish to avoid is simply too abstract to satisfy Article III standing.

Even if Applicants' alleged injuries could be considered "concrete," they are neither "particularized" nor "fairly traceable" to vacating the Rule. First, one of the declarants, Rachel Golden Kroner, claims that invalidating the Rule would increase the risk of her buying illegally fished or mislabeled seafood. Kroner Decl. ¶ 19. But that claimed harm is no different than that which the public at large would suffer if the Rule were to be struck down. *See Prisology, Inc. v. Fed. Bureau of Prisons*, No. 15-5003, 2017 WL 1228576, at *2 (D.C. Cir. Apr. 4, 2017) (rejecting alleged injury because it failed to "differentiate [claimant's injury] from the public at large"). The proposed Rule here affects millions of U.S.-based consumers who purchase the designated at-risk fish populations, and one person's desire for greater information on labels or to avoid buying illegally caught fish is indistinguishable from another's. Consequently, that alleged injury is not "particularized" within the meaning of Article III. *See Lujan*, 504 U.S. at 560 & n.1. Second, one of the declarants—Todd Steiner, a board member for one of the Applicants—asserts that vacating the Rule will affect his ability to study and observe designated at-risk fish populations, including yellowfin tuna and shark, during his visits to Cocos Island, which sits off the coast of Costa Rica. Steiner Decl. ¶¶ 11–12. According to Steiner, he is "aware that illegal fishing occurs within [12 nautical miles of Cocos Island], and [] regularly see[s] evidence of illegal fishing during [his] travels," including fishing boats and discarded fishing equipment. *Id.* ¶ 13. While such an injury is arguably "particularized," Steiner's declaration falls short of establishing that his injury is "fairly traceable" to vacating the Rule. *See Spokeo*, 136 S. Ct. at 1547. For instance, Steiner fails to provide any evidence that the illegal fishing that he has observed around Cocos Island is of species designated by the Rule. True, Steiner has observed two protected species around Cocos Island—

3

yellowfin tuna and shark—but his declaration fails to establish a link between those species and the illegal fishing that occurs there. Further, even if the court were to presume that Steiner witnessed the illegal fishing of yellowfin tuna and shark, he offers no evidence from which to infer that those illegally fished species are exported to the United States and, thereby, subject to the Rule. *Cf.* Steiner Decl. ¶ 16 (claiming that his injury will be avoided by "barring [illegal] seafood imports into the United States"). Accordingly, Steiner's declaration does not demonstrate that affirming or repealing the Rule would affect his ability to study and observe designated at-risk fish populations on Cocos Island and, as a result, his declaration fails to demonstrate that his claimed injury is traceable to the Rule.

Even if the court were to ignore the shortcomings of Applicants' arguments thus far, their reliance on the anticipated conduct of third parties—those who engage in IUU fishing and interact with the U.S. seafood market—further undermines Applicants' standing. When the claimed injury is directly caused by third-party conduct, the D.C. Circuit requires "substantial evidence of a causal relationship between the government policy and the third-party conduct, leaving little doubt as to causation and the likelihood of redress." *Arpaio v. Obama*, 797 F.3d 11, 20 (D.C. Cir. 2015) (quoting *Nat'l Wrestling Coaches Ass'n v. Dep't of Educ.*, 366 F.3d 930, 941 (D.C. Cir. 2004)). Moreover, as here, where standing is "premised on future injury, [the party] 'must demonstrate a realistic danger of sustaining a direct injury.'" *Id.* at 21 (quoting *United Transp. Union v. ICC*, 891 F.2d 903, 913 (D.C. Cir. 1989)). Applicants do not satisfy this more rigorous burden. They have not established a "realistic danger" that the Rule's defeat would result in concrete, particularized harm to their declarants. Nor do their affidavits leave "little doubt" as to causation and the likelihood of redress. Although Applicants' theories of causation "carry with them some plausibility," *id.* at 25 (internal quotation marks omitted), they do not survive the "rigorous review"

4

the D.C. Circuit demands when the alleged injury is caused directly by the expected future actions of third parties.

The primary cases relied upon by Applicants to support standing are inapposite. In those cases, unlike here, the proposed intervenors stood to suffer direct, tangible injury if the agency's action was reversed. *See Crossroads Grassroots Policy Strategies v. Fed. Election Comm'n*, 788 F.3d 312, 318 (D.C. Cir. 2015) (finding that proposed intervenor alleged sufficient injury based on its "significant and direct interest in the [challenged] favorable action shielding it from further litigation and liability"); *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 733 (D.C. Cir. 2003) (finding the same based on proposed intervenors' "threatened loss of tourist dollars, and the consequent reduction in funding for [its] conservation program"). The injuries that Applicants' declarants claim would arise if this court were to strike down the Rule are both more attenuated from potential court action and dependent on the conduct of third parties than the injuries in the cases cited by Applicants.

Accordingly, the court finds that Applicants lack standing.

## II. RULE 24'S REQUIREMENTS

In addition to lacking standing, the court finds that Applicants have not satisfied the requirements of Rule 24. The first subsection of that Rule permits an individual to intervene in ongoing litigation as of right if he or she possesses an unconditional, federal statutory right to do so, or "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a). The Rule also permits a party to intervene permissively, but this is left to the court's discretion. If a non-government actor seeks to intervene permissively, then that individual must

show he or she has a conditional, federal statutory right to intervene or "a claim or defense that shares with the main action a common question of law or fact." *See* Fed. R. Civ. P. 24(b).

Applicants do not have a right to intervene because they have not made even a "minimal" showing that the Federal Defendants "may" not adequately represent their interests in this matter. *See Fund for Animals*, 322 F.3d at 735 ("Rule [24(a)(2)] is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal." (quoting *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972)). True, Applicants' and the Federal Defendants' mutual interest in having the court affirm the Rule does not preclude intervention as a matter of right, and the D.C. Circuit has "look[ed] skeptically on government entities serving as adequate advocates for private parties." *See Crossroads*, 788 F.3d at 321. Applicants, however, have not offered any valid reason for the court to find that the Federal Defendants in this case may not adequately represent their interests.

Applicants offer one general and two specific reasons for why the Federal Defendants will not adequately represent their interests. As for the general reason, Applicants claim they have a "narrow focus on marine conservation and preventing seafood fraud," whereas the federal government has a broader set of objectives, including balancing the interests of facilitating both international trade and industry's ability to comply with the Rule. Applicants' Reply in Supp. of Mot. to Intervene, ECF No. 39, at 13. Such a difference alone cannot be enough to satisfy Rule 24 in cases where the government is defending a rule it promulgated. Almost by definition, the government's objectives in such cases will be broader than any one private party's interest. After all, the federal government typically considers a number of factors and interests when adopting a regulation or rule and, in fact, often is required to do so by law. Private parties, by contrast, are not beholden to advance any interest other than their own. Thus, to say generally that the

6

government has multifarious interests, while the intervenor only has a narrow one, cannot, by itself, satisfy Rule 24.

The more specific differences that Applicants perceive to exist between their interests and those of the Federal Defendants do not change the court's conclusion. Applicants contend that (1) the new administration might adopt policies that negatively affect the force of the Rule, and (2) the Federal Defendants and Applicants disagree over the scope of the Rule and the agency's incremental approach to implementing it. Mot. to Intervene at 19–21. Neither of these claimed differences is availing. First, Applicants' concern that the new administration will usher in policy changes that weaken the Rule is speculative. Notably, at the court's request, the Federal Defendants reported that the new administration supports the Rule and the "Federal Defendants . . . will continue to assert defenses to the claims and allegations made by Plaintiffs in the Complaint." *See* March 22, 2017, Status Report, ECF No. 36. Thus, the mere change in administration, at least at present, does not support Applicants' assertion that the Federal Defendants' representation will prove inadequate. Second, as to Applicants' disagreement with the Federal Defendants over the Rule's scope and the timing of its implementation, those questions are not at issue in this case. Plaintiffs here challenge the Federal Defendants' authority to adopt the Rule and the process by which they adopted it. *See* Compl., ECF No. 1, ¶¶ 67–94. Those claims portend no obvious divergence in the course of litigation, and Applicants have identified none. *See Fund for Animals*, 322 F.3d at 736. Accordingly, Applicants fail to overcome even the low bar of showing that the Federal Defendants may not adequately represent their interests in this litigation.

The two cases upon which Applicants rely—*Crossroads Grassroots Policy Strategies v. Federal Election Commission* and *Fund for Animals, Inc. v. Norton*—do not compel a different

result. Applicants are correct that, in both cases, the D.C. Circuit found that the federal defendants' and proposed intervenors' common interest in defending the challenged regulation did not foreclose intervention as a matter of right. *See Crossroads*, 788 F.3d at 321; *Fund for Animals*, 322 F.3d at 736–37. However, the parties in those cases, unlike here, had clearly divergent interests. In *Fund for Animals*, the proposed intervenor represented the interests of "Mongolia's people and natural resources," and the court found that, as a result, it was "not hard to imagine how the interests of the [proposed intervenors] and those of the [federal defendant] might diverge during the course of the litigation," given that the federal defendant had no duty to vindicate the rights of the Mongolian people. 322 F.3d at 736. The same is true for *Crossroads*. There, the Federal Election Commission ("FEC") issued an enforcement ruling in favor of intervenors, who sought to defend the ruling in an action brought against the FEC. The court found that the federal defendant could not adequately represent the proposed intervenors' interests because, among other things, the FEC might engage in future adversarial proceedings against the intervenor should its decision be reversed. *Crossroads*, 788 F.3d at 321. Put simply, the parties in both *Fund for Animals* and *Crossroads* had clearly defined, differing interests. A similar divergence in interests is lacking in this case.

Finally, the court declines to allow Applicants to intervene permissively. Applicants do not cite a conditional right to intervene by federal statute. *See* Fed. R. Civ. P. 24(b)(1)(A). Moreover, although Applicants may have a claim or defense that shares a common question of law or fact with the main contention in the case, it is not clear on the present record what additional perspective Applicants would offer on the disputed issues. *Cf.* Fed. R. Civ. P. 24(b)(1)(B). Plaintiffs challenge the Federal Defendants' authority to adopt the Rule and the process by which they did so. As Plaintiffs put it: "Those deficiencies are best known to and defended by the federal

8

defendants themselves." Pls.' Opp'n to Mot. to Intervene, ECF No. 37, at 19. Thus, it seems, Applicants' participation as parties in this matter would result in duplicative pleadings and arguments. Accordingly, the court declines to permit Applicants to intervene permissively in this case.[1]

## III. CONCLUSION AND ORDER

Thus, for the reasons stated, Defendant-Intervenor-Applicants' Motion to Intervene is denied.

Dated: April 17, 2017

Amit P. Mehta
United States District Judge

---

[1] The court takes no position on whether Applicants may participate as *amicus curiae*, as there is no motion before the court from Applicants seeking to participate in that capacity.