# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | )  |
|---|---|
| **ALFA INTERNATIONAL SEAFOOD, et al.,** | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Case No. 1:17-cv-00031 (APM) |
| | ) |
| **WILBUR L. ROSS, JR., et al.,** | ) |
| | ) |
| Defendants. | ) |
| | ) |

## MEMORANDUM OPINION AND ORDER

Before the court are the parties' cross-motions for summary judgment. In their Motion for Summary Judgment, Plaintiffs advance several challenges to the Seafood Import Monitoring Program, 81 Fed. Reg. 88,975 (Dec. 9, 2016), known as the "Seafood Traceability Rule" ("the Rule"). One of their primary challenges is that the Rule was promulgated in violation of the Secretary of Commerce's rulemaking authority under the Magnuson–Stevens Fishery Conservation and Management Act, and the Appointments Clause of the Constitution. *See* 16 U.S.C. § 1855(d) (2012); Pls.' Mot. for Summ. J., ECF No. 48 [hereinafter Pls.' Mot.], at 17–22. Specifically, Plaintiffs argue that neither the individual who signed the Rule—Samuel D. Rauch III—nor the individual that the Federal Defendants assert promulgated the Rule—Eileen Sobeck— had the statutory or constitutional authority to engage in rulemaking. Pls.' Mot. at 17–22; Pls.' Resp. to Defs.' Mots., ECF No. 62, at 9–16.

Plaintiffs have raised important statutory and constitutional questions concerning the validity of the rulemaking process that culminated in the Rule's final issuance on December 9, 2016. Indeed, the parties' legal arguments and factual contentions demonstrate that Plaintiffs' statutory and Appointments Clause challenges are not trivial matters. That said, the alleged

procedural defects in the rulemaking process, even if borne out, need not spell the Rule's demise, particularly at this juncture. Rather, both the D.C. Circuit and courts in this District have held that an agency action that would be otherwise unlawful due to procedural or technical defects, similar to those alleged here, can be cured through a subsequent lawful ratification of that action. The court takes that path in this matter.

The D.C. Circuit has held that an enforcement decision made by a person lacking proper authority is nonetheless valid if that decision is later ratified by someone with the legal authority to do so. In *Federal Election Commission v. Legi-Tech, Inc.*, the Circuit was faced with determining whether the Federal Election Commission's ("FEC") initiation of an enforcement action against Legi-Tech was invalid in light of the Circuit's earlier ruling that the FEC was improperly constituted and, thus, without authority to bring enforcement actions. 75 F.3d 704, 706 (D.C. Cir. 1996). Four days after the D.C. Circuit declared the Commission's composition invalid, the FEC voted to reconstitute itself, and the newly formed Commission subsequently agreed to re-initiate the enforcement action against Legi-Tech. *Id.* The district court, however, dismissed the case against Legi-Tech, holding that the newly constituted FEC's ratification of the prior proceedings was insufficient to support the original charges and that the FEC, instead, had to initiate new proceedings against Legi-Tech. The D.C. Circuit reversed the district court on the ground that the ratification was sufficient to provide the FEC with enforcement authority, and rejecting Legi-Tech's argument that the initial authorization so tainted the underlying enforcement proceedings that they could not be cured by the subsequent reauthorization, even if reauthorization was "nothing more than a 'rubberstamp.'" *Id.* at 709. The Circuit explained that "forcing the Commission to start at the beginning of the administrative process, given human nature, promises

no more detached and 'pure' consideration of the merits of the case than the Commission's ratification decision reflected." *Id.*

Two years later, the D.C. Circuit re-affirmed the *Legi-Tech* approach in *Doolin Security Savings Bank, F.S.B. v. Office of Thrift Supervision*, 139 F.3d 203 (D.C. Cir. 1998). The plaintiff in that case challenged the validity of a final cease and desist order issued by the agency's new, properly appointed Director on the theory that the final order was invalid because the agency's charging document—a necessary precursor to the cease and desist order—was issued by the agency's *acting* Director, who allegedly lacked authority to initiate an enforcement action. *Id*. at 211–12. Relying on *Legi-Tech*, the D.C. Circuit held that the new Director had made a "detached and considered judgment" in issuing the final cease and desist order and thereby "ratified" the earlier decision to issue the notice of charges. *Id.* at 213. In light of the new Director's decision, the Circuit concluded, it did not need to decide whether the acting Director had acted without authority: "Because we hold that [the validly appointed Director] effectively ratified the Notice of Charges signed by [the acting Director] at a time when he could have initiated the charges himself, we do not decide whether the [acting Director] lawfully occupied the position of Director." *Id.* at 214.

Courts in this District have extended the rationale and legal principles articulated in *Legi-Tech* and *Doolin* to the rulemaking context. In *State National Bank of Big Spring v. Lew*, the court was presented with the questions of whether the recess appointment of the Director of the Consumer Financial Protection Bureau was constitutional and, if not, whether the rules he had issued during his recess appointment were invalid under the Appointments Clause. 197 F. Supp. 3d 177, 179–180 (D.D.C. 2016). Applying *Legi-Tech* and *Doolin*, Judge Huvelle concluded that she need not reach either issue because the Director ratified the challenged rules after he was re-

3

appointed and confirmed by the Senate. *Id.* at 180, 182–85. In rejecting the plaintiffs' argument that the agency could not cure the alleged rulemaking deficiencies through ratification, the court observed that, "regardless of the type of administrative action[,] . . . [D.C. Circuit] decisions have consistently declined to impose formalistic procedural requirements before a ratification is deemed to be effective." *Id.* at 184. Citing *Legi-Tech*, the court went on to explain that "'the better course is to take the [ratification] at face value and treat it as an adequate remedy,' even though it may well be nothing more than a rubberstamp." *Id.* at 185 (quoting *Legi-Tech*, 75 F.3d at 709). Accordingly, Judge Huvelle held that the Director's ratification of his actions during the recess appointment period cured any alleged defect in the rulemaking.

The court in *Huntco Pawn Holdings, LLC v. U.S. Department of Defense* recently adopted a similar approach. No. 161433, 2016 U.S. Dist. LEXIS 139619 (D.D.C. Oct. 3, 2016). The plaintiffs in that case, like Plaintiffs here, contested an agency rule on the ground that the person who allegedly promulgated the rule lacked the authority to do so. *See id*. at *65–65. Judge Kollar-Kotelly rejected that argument, in part, because the defendant had submitted a signed letter from a properly appointed official—and not the individual who purportedly carried out the rulemaking—that "affirmed and ratified" the rule. *See* Ex. A (declaration submitted in *Huntco Pawn*). The court held that the ratification settled "any serious dispute that the Final Rule, as published, reflects the decisions of the agency with authority to promulgate it." *Huntco Pawn*, 2016 U.S. Dist. LEXIS 139619, at *65. Notably, she reached that conclusion even though the rule at issue had already entered into effect. *See id*. at 11.

In light of above-cited authorities, the proper course at this juncture—just months before the Rule goes into effect—is to defer ruling on Plaintiffs' broader challenge to the agency's authority to engage in rulemaking and, instead, afford the Federal Defendants an opportunity to

4

submit a signed statement from a Principal Officer within the Department of Commerce that ratifies the Rule. This approach will not prejudice Plaintiffs. A statement acknowledging that the Department of Commerce would re-promulgate the Rule in the same manner, even if it were required to re-start the notice and comment process, will not alter Plaintiffs' current position in any way. *See Doolin*, 139 F.3d at 214; *Legi-Tech*, 75 F.3d at 708; *Huntco Pawn*, 2016 U.S. Dist. LEXIS 139619, at *65; *State Nat'l Bank*, 197 F. Supp. 3d at 185. Such an approach also aligns with the preferred remedy for an Administrative Procedure Act violation—i.e., remanding to the agency to afford an opportunity to cure the violative act, if possible—particularly where, as here, the disruptive effect of vacatur would be substantial. *See Allied-Signal, Inc. v. U.S. Nuclear Regulatory Comm'n*, 988 F.2d 146, 150–51 (D.C. Cir. 1993); *New England Coal. on Nuclear Pollution v. N.R.C.*, 727 F.2d 1127 (D.C. Cir. 1984). Moreover, the court finds no reason to delay affording the agency that curative opportunity now, given that the court likely would do the same if it were to agree with Plaintiffs' constitutional or statutory arguments.

For the reasons stated above, the Federal Defendants shall, no later than June 30, 2017, either provide the court with a declaration from the Secretary of Commerce—or another Principal Officer within the Department with rulemaking authority—that affirms and ratifies the Seafood Traceability Rule, or file a Status Report that indicates a date by which such a statement will be submitted, if at all. Any ratifying statement submitted by the Federal Defendants must (1) contain an acknowledgement by the Principal Officer of the present dispute over the authorization for the promulgation of the Rule; (2) confirm the Officer's knowledge of the Rule's purpose and requirements; and (3) represent that the Officer affirms and ratifies the Rule. If Plaintiffs wish to challenge the ratifying statement's effectiveness in curing any constitutional or statutory defect

5

attendant to the Rule's final issuance, then Plaintiffs may submit a brief of no more than five pages within seven days of the Federal Defendants' filing.

Dated: June 22, 2017

Amit P. Mehta
United States District Judge



**UNDER SECRETARY OF DEFENSE**
**4000 DEFENSE PENTAGON**
**WASHINGTON, D.C. 20301-4000**

**PERSONNEL AND READINESS**

SEP 8 2016

On July 22, 2015, the Department of Defense, Office of the Under Secretary of Defense for Personnel and Readiness, published in the Federal Register a Final Rule entitled "Limitations on Terms of Consumer Credit Extended to Service Members and Dependents," 80 FR 43560 (the "Final Rule"). The authority under which the Final Rule was issued has been questioned in litigation. To resolve these questions, and in an abundance of caution, I state that I have become familiar with the contents of the Final Rule, and I hereby affirm and ratify the Final Rule as it was published in the Federal Register on July 22, 2015, including all regulatory analysis certifications contained therein.

Peter Levine
Acting