**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                    )
ALFA INTERNATIONAL SEAFOOD,         )
INC., et al.,                       )
                                    )
    **Plaintiffs,**               )
                                    )
        v.                     )    Case No. 1:17-cv-00031 (APM)
                                    )
WILBUR L. ROSS, JR., U.S. Secretary of )
Commerce, et al.,                   )
                                    )
    **Defendants.**               )
_____ )

## MEMORANDUM OPINION AND ORDER

Plaintiffs, nine U.S.-based seafood importers, processors, and harvesters, instituted this action to challenge and invalidate the Seafood Traceability Rule, a federal regulation aimed at remedying "illegal, unreported, and unregulated" fishing and seafood fraud. *See* Seafood Import Monitoring Program, 81 Fed. Reg. 88,975 (Dec. 9, 2016). As relevant here, before the start of summary judgment briefing, three environmental groups—Oceana, Inc., the Natural Resources Defense Council, Inc., and the Center for Biological Diversity (collectively, the "Conservation Groups" or "Groups")—sought to intervene in the case to defend the Rule, *see* Mot. to Intervene, ECF No. 24, but the court denied their request on April 17, 2017, *see* Mem. Op. & Order, ECF No. 44 [hereinafter April 17 Order].

The Conservation Groups noticed their appeal from the April 17 Order, *see* ECF No. 70, and, while that appeal was pending, the court granted summary judgment in favor of Defendants and upheld the Rule, *see* Order, ECF No. 88. Plaintiffs opted not to appeal that final judgment, rendering the Conservation Groups' appeal of the April 17 Order moot. Accordingly, upon the Groups' motion, the D.C. Circuit dismissed the Groups' appeal and remanded the case to this court

with instructions to "consider the [Groups'] request for vacatur as a motion for relief from [the April 17 Order] pursuant to Fed. R. Civ. P. 60(b)." *See* Mandate, ECF No. 90, Order, ECF No. 90-1 (quoting *U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 29 (1994)).

Now before the court is the Conservation Groups' Motion to Vacate the April 17 Order. *See* Mot. to Vacate Order on Mot. to Intervene, ECF No. 92 [hereinafter Groups' Mot.]. Plaintiffs oppose the motion. Pls.' Mem. in Opp'n to Mot. to Vacate Order on Mot. to Intervene, ECF No. 93 [hereinafter Pls.' Opp'n]. The matter is now ripe for consideration.

I.

Federal Rule of Civil Procedure 60(b)(6) "provides courts with authority adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice." *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 863–64 (1988) (internal quotation marks omitted). Pursuant to that Rule, a court may, in its discretion, grant relief from a judgment for "any . . . reason that justifies relief." Fed. R. Civ. P. 60(b)(6). "Mootness provides such a reason." *Rubin v. The Islamic Republic of Iran*, 563 F. Supp. 2d 38, 40 (D.D.C. 2008). When a civil case becomes moot while awaiting appellate review, "the established practice in the federal system is to reverse or vacate the judgment below." *Sands v. NLRB*, 825 F.3d 778, 785 (D.C. Cir. 2016) (cleaned up). Vacatur "clears the path for future relitigation of the issues between the parties and eliminates a judgment, review of which was prevented through happenstance." *United States v. Munsingwear, Inc.*, 340 U.S. 36, 40 (1950).

"Because vacatur is equitable in nature, [courts] look to notions of fairness when deciding whether to use the remedy." *Sands*, 825 F.3d at 785; *see also Bancorp*, 513 U.S. at 25 ("A party who seeks review of the merits of an adverse ruling, but is frustrated by the vagaries of circumstance, ought not in fairness be forced to acquiesce in the judgment."). As such, "[c]ourts

usually vacate a judgment 'when mootness results from unilateral action of the party who prevailed below' or from circumstances beyond the control of the parties." *Sands*, 825 F.3d at 785 (quoting *Alvarez v. Smith*, 558 U.S. 87, 98 (2009) (Stevens, J., concurring in part and dissenting in part)). "By contrast, . . . when a case becomes moot because the parties reached a settlement—and the petitioner therefore 'voluntarily forfeited' a remedy in court—vacatur is typically inappropriate." *Id.* (citing *Bancorp*, 513 U.S. at 22–25); *see also Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1129 n.20 (10th Cir. 2010) (explaining that *Bancorp*'s rationale, which addresses appellate court vacatur, likewise "governs the district court's decision whether to vacate its own judgment pursuant to Fed. R. Civ. P. 60(b)").

II.

The Conservation Groups contend that because circumstances beyond their control mooted their appeal of the court's intervention decision, this court should employ the "normal rule" and vacate the April 17 Order. Groups' Mot., Mem. of P. & A., ECF No. 92-1, at 3 (quoting *Camreta v. Greene*, 563 U.S. 692, 713 (2011)). In response, Plaintiffs say that vacatur is inappropriate for three reasons: (1) the Conservation Groups lack Article III standing to pursue any relief in this matter; (2) the Conservation Groups failed to timely appeal the court's April 17 Order; and (3) the established practice of vacatur is unwarranted in a case such as this one, where the unsuccessful intervenors' side prevailed on the merits. Pls.' Opp'n at 2. The court considers Plaintiffs' challenges to vacatur in turn.

A.

The court quickly dispenses with Plaintiffs' standing argument. "[S]tanding is assessed as of the time a suit commences." *Chamber of Commerce of U.S. v. EPA*, 642 F.3d 192, 199 (D.C. Cir. 2011) (quoting *Del Monte Fresh Produce Co. v. United States*, 570 F.3d 316, 324 (D.C. Cir.

2009) (alteration in original)). Although the court denied intervention based in part on lack of standing, *see* April 17 Order at 1–5, there can be no dispute that the Conservation Groups had Article III standing to appeal from that adverse ruling, *see* 15A Charles Alan Wright, et al., *Federal Practice and Procedure* § 3902 (2d ed.) ("Appeal is taken by one or more persons who were proper parties in the district court and who are obviously aggrieved by the judgment. Such appellants have standing to appeal."); *see also Alt. Research & Dev. Found. v. Veneman*, 262 F.3d 406, 409 (D.C. Cir. 2001) ("[D]enial of intervention as of right is an appealable, final order regardless of the merits of the claim for intervention as of right."). As the Circuit dismissed the Groups' appeal on mootness grounds but remanded to consider the question of vacatur, the Conservation Groups' standing to seek such relief cannot be in doubt.

Plaintiffs nevertheless insist that the Conservation Groups lack standing because "there is no longer a live district court case in which to intervene." Pls.' Opp'n at 6. But that argument fails because it conflates the concepts of standing and mootness. To put the difference succinctly, "[t]he requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980) (internal quotation marks omitted). Here, the Groups' appeal from the order denying intervention is moot, but the Groups' personal stake in the litigation remains unaltered, particularly since the sole remaining issue of vacatur directly affects their interests. The finality of the court's decision on the merits therefore does not strip the Conservation Groups of standing to pursue vacatur of the court's April 17 Order.

Alternatively, Plaintiffs argue that the Groups lack standing because they cannot demonstrate the requisite injury in fact insofar as they have "failed to discuss how the district court's decision, which was case- and fact-specific, would have any adverse precedential effect."

4

Pls.' Opp'n at 7. Plaintiffs, however, cite no authority for the proposition that, to establish standing, a party or putative intervenor seeking vacatur must show that allowing the adverse decision to remain will have an "adverse precedential effect." *See generally* Pls.' Opp'n. That is not surprising. Accepting Plaintiffs' position would directly contradict the Circuit's instruction that "typically" the district court's decision should be vacated when that decision is no longer amenable to review due to mootness or a lack of standing. *See Maydak v. United States*, 630 F.3d 166, 177 (D.C. Cir. 2010). In any event, requiring a showing of "adverse precedential effect" would make little sense, as district court decisions, like the April 17 Order, have no precedential force. Accordingly, the court therefore rejects Plaintiffs' standing argument.

B.

Next, Plaintiffs' timeliness objection is rooted in a flawed reading of the Federal Rules of Appellate Procedure. According to Plaintiffs, Rule 4(a)(1)(B)'s 60-day time period for appeal is inapplicable because, having been denied intervention in this court, the Groups are not a "party" within the meaning of that Rule. *See* Pls.' Opp'n at 5–6 (citing Fed. R. App. P. 4(a)(1)(B)). As such, Plaintiffs contend, the Groups had only 30 days to appeal, *see* Fed. R. App. P. 4(a)(1)(A), and therefore their notice of appeal from the April 17 Order—filed 49 days after the Order—is untimely.

Plaintiffs pressed this same timeliness argument in the D.C. Circuit, *see* Appellees' Resp. to Mot. to Dismiss Case as Moot and to Vacate, *Alfa Int'l Seafood v. Ross*, Case No. 17-5138, Doc. No. 1704063, at 2–5, yet the Circuit dismissed the appeal as moot, and not as untimely. *See* Mandate, ECF No. 90, Order, ECF No. 90-1. Surely, had the D.C. Circuit thought the Groups' appeal to be untimely, it would have said so, as the time limits provided by Rule 4(a)(1)(A) and (B), prescribed in 28 U.S.C. § 2107(a) and (b), are "mandatory and jurisdictional." *Cf. Hamer v.*

5

*Neighborhood Hous. Servs. of Chi.*, 138 S. Ct. 13, 16–22 (2017) (differentiating between the congressionally-imposed jurisdictional time limits to file a notice of appeal contained in 28 U.S.C. § 2107, and the court-made, non-jurisdictional time limits contained in Fed. R. App. P. 4); *see id.* at 17 ("Failure to comply with a jurisdictional time prescription . . . deprives a court of adjudicatory authority over the case, necessitating dismissal . . . .").

In any event, Plaintiffs' timeliness argument is unavailing. Though they are not "parties" to the underlying matter because they were denied intervention, the Conservation Groups are "parties" to the appeal from the denial of their intervention motion within the meaning of Rule 4(a)(1)(B). *See Hodgson v. United Mine Workers of Am.*, 473 F.2d 118, 123 (D.C. Cir. 1972) (applying Fed. R. App. P. 4(a)'s 60-day period in a case in which a federal official was a party to determine whether the intervenor-appellants' appeal was timely). Plaintiffs' citation to *United States ex rel. Eisenstein v. City of New York*, 556 U.S. 928 (2009), does not persuade the court otherwise. *See* Pls.' Opp'n at 5–6. The Court in *Eisenstein* dealt with the question whether Rule 4's 30-day or 60-day time limit to file a notice of appeal applies when the United States declines to intervene in a False Claims Act matter. *See* 556 U.S. at 929. The Court concluded that when the United States "decline[s] to intervene in a privately initiated [False Claims Act] action," the United States is not a "party" to the litigation and therefore must bring its appeal pursuant to the 30-day time limit of Rule 4(a)(1)(A). *Id.* at 937. Despite the significance Plaintiffs attribute to it, *Eisenstein* does not stand for the proposition that a proposed intervenor is not a "party" to the appeal of the denial of its *own* intervention; rather, it simply affirms the principle that a proposed intervenor is not a "party" to a matter in which it has not yet intervened. Indeed, the Court in *Eisenstein* recognized that, even without intervention, the United States could appeal other types of collateral orders in a False Claims Act action, as in those circumstances, "the Government is a

6

party for purposes of appealing the specific order at issue." *Id.* at 931 n.2. Similarly, here, the Conservation Groups are a "party" to the appeal of the April 17 Order, and therefore timely filed their notice of appeal within the 60-day deadline.

C.

The court turns last to Plaintiffs' argument against vacatur on the merits. According to Plaintiffs, because the Groups' side in the underlying litigation prevailed when the court upheld the Seafood Traceability Rule—albeit without their intervention—vacatur is inappropriate. In support of its argument, Plaintiffs distinguish the Groups from the appellants in other cases applying vacatur under *Munsingwear*, highlighting that those litigants were all "disappointed appellants." Pls.' Opp'n at 2–4.

To begin with, the Conservation Groups are not "lower court winners" with regard to the intervention decision; in that respect, the Groups are decidedly "disappointed appellants" who were denied the relief they sought before this court.[1] Moreover, contrary to Plaintiffs' contention, the "principal" consideration in determining whether vacatur is warranted is not whether the appellant's "side" prevailed on the merits, but instead "whether the party seeking relief from the judgment caused the mootness by voluntary action." *Bancorp*, 514 U.S. at 24. "[I]f the party who lost below did not cause the case to become moot, that is, if happenstance or the actions of the prevailing party ended the controversy, vacatur remains the standard form of relief." *N. Cal. Power Agency v. Nuclear Regulatory Comm'n*, 393 F.3d 223, 225 (D.C. Cir. 2004). By framing the vacatur inquiry in terms of fairness and fault, courts ensure that "those who have been

---

[1] Plaintiffs' reliance on the Supreme Court's decision in *Camreta* to argue that the Conservation Groups are "lower court winner[s]" is misplaced. In that case, government officials appealed a decision granting them qualified immunity from suit, but holding that they violated the plaintiff's constitutional rights. *Camreta*, 563 U.S. at 699–700. The Court concluded that, although the officials prevailed in the court below, their appeal of the adverse constitutional decision constituted an exception to the "usual rule against considering prevailing parties' petitions." *Id.* at 709. *Camreta* has no bearing on the instant decision, as, unlike the partially successful government officials in that case, the Conservation Groups did not prevail on the only issue they were permitted to litigate: the right to intervene.

7

prevented from obtaining the review to which they are entitled are not treated as if there had been a review." *Camreta*, 563 U.S. at 712 (alterations and internal quotation marks omitted).

Applying these principles, the court holds that the equities favor vacating the April 17 Order. First, "the roles of the parties in mooting the case counsel in favor of vacatur." *Sands*, 825 F.3d at 786. Plaintiffs' decision not to appeal the adverse summary judgment decision had the effect of mooting the Groups' appeal of the intervention order. The Groups therefore were not responsible for rendering their appeal unreviewable. Second, the concern underlying *Bancorp* that parties may seek to "manipulate the judicial system by rolling the dice in the district court and then washing away any unfavorable outcome through use of settlement and vacatur" is not present here. *See Humane Soc. of U.S. v. Kempthorne*, 527 F.3d 181, 186 (D.C. Cir. 2008) (internal quotation marks and alterations omitted). Again, the Conservation Groups' appeal was mooted for reasons outside their control; thus, they cannot be accused of attempting to game the system. Finally, the public interest would be served by vacatur of April 17 Order, as doing so "clear[s] the path for future relitigation of the issues." *See Sands*, 825 F.3d at 786 (quoting *Bancorp*, 513 U.S. at 22–23). To be sure, as Plaintiffs argue, there will be no relitigation of the Groups' right to intervene in this case, as the case is now closed on the merits. But the Circuit in *Sands* could not have intended "future relitigation" to pertain solely to the case at bar. After all, once an appeal is dismissed as moot or for lack of standing, the prospect that the same case will be brought by the same litigants in the trial court always will be remote. Clearly then, the term "future relitigation" encompasses other matters. Vacatur of the April 17 Order ensures that, in future bids to intervene, the Conservation Groups will not have to contend with an adverse decision that they were unable to contest on appeal through no fault of their own. In sum, the court concludes that the equities justify vacating its decision denying the Conservation Groups' request to intervene.

III.

Circumstances beyond the Conservation Groups' control have rendered moot their appeal of this court's decision denying their motion to intervene. Accordingly, the court adheres to established practice and grants the Groups' motion to vacate the April 17 Order, ECF No. 92.

Dated: August 10, 2018

Amit P. Mehta
United States District Judge